ORIGINAL FILED

JUN 2 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  MICHAEL VON LOEWENFELDT (178665)
   ADRIAN J. SAWYER (203712)
2  **KERR & WAGSTAFFE LLP**
   100 Spear Street, Suite 1800
3  San Francisco, CA 94105–1528
   Telephone: (415) 371-8500
4  Fax: (415) 371-0500

5  Attorneys for Plaintiff
   JOHN ERIC PERTH

6                                    E-filing

7

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10

11  JOHN ERIC PERTH, an individual,          Case No.

12  Plaintiff,                               **COMPLAINT FOR DAMAGES:**

13  v.                                       **(1) BREACH OF PROMISSORY NOTE**

14  LOUIS DAVIS, an individual, and SUE ANN  **(2) BREACH OF CONTRACT**
15  DAVIS, an individual,                    **(3) FRAUD**

16  Defendants.                              **(4) CONVERSION**

17

18                                           **JURY TRIAL DEMANDED**

19

20

21

22

23

24

25

26

27

28

KERR
&
WAGSTAFFE
LLP                                                    COMPLAINT

Plaintiff, John Eric Perth, alleges as follows:

## SUMMARY OF CLAIM

1.      This is a case about how Defendants duped a trusting investor and long-time friend, Plaintiff John Eric Perth, also known as Lord Perth, eighteenth Earl of Perth and a citizen of the United Kingdom.  Over the years, at the behest of Defendant Louis Davis, Lord Perth wired over $1 million dollars to Louis Davis personally to invest in a company called CyberMDx, of which Louis Davis was the CEO, on the basis of Louis Davis's promises that he would invest the money in CyberMDx on Lord Perth's behalf.  Lord Perth will never recoup this investment, because CyberMDx is now defunct.  Worse yet, some $404,876 of the $1,110,000 never made it into CyberMDx, but was instead misappropriated and converted by Louis Davis and his wife, Sue Ann Davis, for personal expenses.

2.      The $404,876 is not the only money owed to Lord Perth.  In addition to that money, Davis signed a promissory note agreeing to repay an additional $150,000 to Lord Perth.  Upon demand for repayment by Lord Perth, however, Davis has flatly declined to live up to his obligations.  Similarly, Louis Davis orally promised to repay $27,500 to Lord Perth, if Lord Perth would wire him that sum of money to invest in CyberMDx.  This promise too was breached.  Lord Perth seeks damages for the breaches of those promises, for fraud, and for conversion.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this action under 28 U.S.C. section 1332.  The matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between a citizen of a foreign country and citizens of California.

4.      Venue is proper under 28 U.S.C. section 1391(a)(1) and 1391(a)(2).  Both Defendants reside in Alameda County, which is located in this judicial district.  In addition, Lord Perth wired his money to a Bank of America account in San Francisco, and Davis entered into the promissory note in San Francisco, such that a substantial portion of the events giving rise to the claim occurred in this judicial district.

KERR
&
WAGSTAFFE
LLP

COMPLAINT

## INTRADISTRICT ASSIGNMENT

5.      As a substantial portion of the events giving rise to this action occurred in San Francisco, this action should be assigned to either the San Francisco or Oakland Division pursuant to Civil L.R. 3-2(c).

## PARTIES

6.      Plaintiff John Eric Perth is a citizen of the United Kingdom and resides in London, England.

7.      Defendant Louis Davis is a citizen of California and resides in Alameda County, California.

8.      Defendant Sue Ann Davis is a citizen of California and resides in Alameda County, California.

## FACTUAL ALLEGATIONS

### Overview Of Lord Perth's Connection To Louis Davis And CyberMDx

9.      Lord Perth is a shareholder and creditor of CyberMDx, Inc., an insolvent Delaware corporation which had its principal place of business in Providence, Rhode Island.

10.      Lord Perth has known Louis Davis since about 1979, when they met in London. From about 1979 to about 1986, both were involved with a technology company known as Churchill International, which had offices in Silicon Valley, San Francisco and Boston.

11.      Louis Davis organized CyberMDx and served as its CEO. The company's purpose was to develop and market a remote medical service and diagnostic product.

### Lord Perth Is Induced To Wire Money To Louis Davis To Invest In CyberMDx

12.      In 2003, Louis Davis approached Lord Perth with a request to invest funds in CyberMDx.

13.      Louis Davis requested that Lord Perth send the funds to his personal bank account, rather than sending them directly to the company, and represented to Lord Perth that he would invest the funds received in CyberMDx on Lord Perth's behalf. As a reason for this arrangement, Louis Davis stated that he did not want CyberMDx's Chief Technology Officer to touch the money, because the Chief Technology Officer would waste it.

KERR
&
WAGSTAFFE
LLP

14.    In response to this request and in reliance on Louis Davis' representation that the funds would be invested in CyberMDx, on September 29, 2003, Lord Perth wired $50,000 from his London account to Louis Davis' account at the Bank of America in San Francisco, California.

15.    Thereafter, between May 2004 and August 2006, Lord Perth made seventeen further wire transfers to that same account at Bank of America in San Francisco, at Louis Davis's request and in reliance on his representation that each sum transferred would be invested in CyberMDx in return for shares of CyberMDx.  Between September 2003 and August 2006, the amount Lord Perth transferred to Louis Davis to be invested in CyberMDx totaled $1,110,000.

16.    In connection with these wire transfers, Louis Davis made two independent promises to repay sums to Lord Perth.  First, on or about May 19, 2005, at San Francisco, California, Louis Davis, executed a promissory note in the principal amount of $150,000, payable with interest thereon at the rate of 1% above prime per annum from the date of the note.  When Lord Perth demanded repayment of the note in September 2007, however, Louis Davis refused.

17.    Second, in or about August 2006, Louis Davis asked Lord Perth to wire additional monies to Louis Davis to invest in CyberMDx.  The two orally agreed that Lord Perth would wire an additional $55,000 to Louis Davis to invest in CyberMDx, and that Louis Davis would personally repay $27,500 of that $55,000 to Lord Perth.  Louis Davis's agreement was in consideration for an additional and final transfer by Lord Perth of $55,000, which occurred on August 17, 2006.  As Louis Davis's primary source of income, on information and belief, was CyberMDx, and as he drew a salary from CyberMDx, this transfer was of direct and independent benefit to Louis Davis.

18.    On September 17, 2007, in an e-mail that he signed, Louis Davis affirmed each of these two loans, stated that each was a loan to him, and stated that both sums (the $150,000 and the $27,500) had been put into CyberMDx.

19.    On May 18, 2006, CyberMDx held its annual stockholders meeting, at which Mr. Davis made a favorable and encouraging presentation of the company's business prospects.  In

KERR
&
WAGSTAFFE
LLP

reliance on these and other positive statements concerning the company and its prospects, Lord

Perth continued to wire monies to Louis Davis to invest in the company on Lord Perth's behalf.

20.     In or about July 2007, Perth and other investors were informed by Mr. Davis and

Mr. Wyle that, contrary to prior representations, the company was virtually out of cash and

urgently required a further infusion of funds to keep operating.

21.     On or about August 1, 2007, Mr. Wyle, as CyberMDx's Chief Financial Officer,

advised Perth and the other CyberMDx investors that the company would need at least $77,000

to continue operations through August.  During July and August 2007, Perth and other investors

requested that the CyberMDx principals, including Louis Davis, provide financial information

that would allow them to consider the company's new funding requests.  Despite these requests,

the only information provided was an overdue unaudited financial report of calendar year 2006

operations, which was later revealed to be incomplete and inaccurate.  Louis Davis and Mr. Wyle

failed and refused to present any meaningful financial report of operations in 2007.

22.     On September 1, 2007, Mr. Davis sent Perth and other investors an e-mail

message advising that the CyberMDx Board of Directors "has voted to cease operation as of

August 31, 2007," apparently because the company had run out of operating funds.

23.     The news of the extreme nature of CyberMDx's financial problems came as a

shock to Perth, who had invested substantial amounts in the company in reliance on positive

statements about the company's prospects by Louis Davis.  At the request of a number of

investors, Lee-Ann Beaupre, who had been the bookkeeper in the CyberMDx office in

Providence, Rhode Island, put together records documenting each investor's cash investment in

CyberMDx based upon the company's bank records.

**In 2008, Lord Perth Discovers Louis Davis's Fraud And Conversion**

24.     On January 14, 2008, Ms. Beaupre e-mailed another CyberMDx investor a cash

investment report showing that of the $1,110,000 Lord Perth had transferred to Louis Davis for

investment in CyberMDx, Louis Davis had only deposited $705,124 in the CyberMDx bank

account, and that $404,876 is missing.

KERR
&
WAGSTAFFE
LLP

- 4 -

25.    The company's bank records have revealed that in fact, the initial two transfers Perth made to Louis Davis for investment in CyberMDx, totaling US$100,000, apparently were not deposited in the company's bank account, and that only a portion of each subsequent transfer was deposited into the company's account.

26.    The fact that the misappropriation began with the very first transfers is particularly striking, because Louis Davis had induced Lord Perth to commence transferring and continue to transfer monies to Davis's personal bank account on the representation that the monies would be invested in their entirety in CyberMDx on Lord Perth's behalf.  Thus, had Lord Perth known that any portion of the monies were being misappropriated, he would have immediately ceased the transfers.  Thus, all $1,110,000 wired by Lord Perth to Louis Davis was expended by him in reliance on Louis Davis's fraudulent misrepresentations that Davis would invest the entire amount of each transfer in CyberMDx on Lord Perth's behalf.

27.    CyberMDx is now defunct.  It is out of cash and has ceased operating, and Lord Perth will not get back a penny of what he wired to Louis Davis to invest in CyberMDx.

28.    As to the $404,876 of the $1,110,000, constituting that amount that was never even put into CyberMDx by Louis Davis, that $404,876 has apparently been diverted by Louis Davis, and, on information and belief, Sue Ann Davis, to pay for personal expenses for their individual benefit and the benefit of their marital community.

29.    In particular, on or about April 5, 2005, Sue Ann Davis took out a $433,200 construction loan to build on a parcel of land in her name.  On information and belief, at least some of the $404,876 misappropriated by the Davises was used to pay that loan and/or to build on that parcel of land.  Lord Perth is informed and believes that this land and dwelling thereon is a community property asset that is being held in Sue Ann Davis's name in an effort to hide the ill-gotten gains of Louis Davis's fraud and conversion.

30.    Thus, Louis Davis's fraud has damaged Lord Perth in the full amount of $1,110,000.  First, Lord Perth began wiring and continued to wire money to Louis Davis to invest in CyberMDx on Lord Perth's behalf on the representation that all of the money transferred would be invested in CyberMDx.  In fact, beginning with the very first transfer, Louis

KERR
&
WAGSTAFFE
LLP

Davis began misappropriating some of the money, a fact which, if known, would have caused Lord Perth to stop transferring monies to Davis. Second, Louis Davis and Sue Ann Davis, as alleged above, simply misappropriated $404,876 of the money transferred by Lord Perth to Louis Davis.

## FIRST CAUSE OF ACTION
### Breach of Promissory Note
(Against Defendant Louis Davis)

31.    Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 30, as though fully set forth herein.

32.    On or about May 19, 2005, at San Francisco, California, Defendant Louis Davis, for valuable consideration, made, executed, and delivered to Plaintiff the promissory note alleged herein, in the principal amount of $150,000, payable with interest thereon at the rate of 1% above prime interest per annum from the date of the note. A copy of this note is attached hereto as Exhibit A and incorporated herein by reference.

33.    In September, 2007, Plaintiff demanded by e-mail that Defendant Louis Davis pay the note. By e-mail dated September 17, 2007, Defendant Louis Davis failed and refused and continues to fail and refuse to pay the note, or any part of it, thus breaching his obligations under the note. There is now due, owing, and unpaid from Defendant Louis Davis to Plaintiff the sum of $150,000, together with interest thereon at the rate of 1% above prime interest per annum from May 19, 2005.

34.    Lord Perth performed all of his obligations under the May 19, 2005 promissory note, except for those obligations which, because of Louis Davis's breach, Lord Perth has been excused or prevented from performing.

35.    As a direct and proximate result of Louis Davis's breach of his obligation to repay the $150,000 principal on the promissory note, together with interest at the rate of 1% above prime interest per annum, Plaintiff has been injured and suffered damages in the amount of $150,000 plus interest at 1% above prime interest per annum from the date of May 19, 2005.

KERR
&
WAGSTAFFE
LLP

COMPLAINT

36.     In addition, the note provides that Louis Davis will pay any costs and expenses of enforcement or collection, including reasonable attorneys' fees.  Plaintiff is thus entitled to an award of his attorneys' fees.

### SECOND CAUSE OF ACTION
### Breach of Contract
#### (Against Defendant Louis Davis)

37.     Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 36, as though fully set forth herein.

38.     In or about August 2006, Louis Davis and Lord Perth entered into an agreement whereby Lord Perth would continue to wire monies to Louis Davis to invest in CyberMDx, and would continue to receive shares for said monies, and in return Louis Davis would agree to repay an additional $27,500 of the monies, over and above the $150,000 that he agreed to repay by the May 19, 2005 promissory note.

39.     As Louis Davis's primary source of income, on information and belief, was CyberMDx, and as he drew a salary from CyberMDx, this transfer was of direct and independent benefit to Louis Davis.

40.     In addition, a September 17, 2007 e-mail from Louis Davis to Lord Perth affirmed that the $27,500 was in fact a loan to Davis.

41.     Louis Davis has failed to perform his obligations under this agreement, by failing to repay the $27,500.

42.     Lord Perth performed all of his obligations under the contract, except for those obligations which, because of Louis Davis's breach, Lord Perth has been excused or prevented from performing.

43.     As a direct and proximate result of Louis Davis's breach of his obligations under the contract, Lord Perth has been injured and suffered damages in the amount of $55,000, consisting of the $27,500 that Louis Davis agreed to repay, and of the additional $27,500, constituting the remainder of that $55,000 wire transfer, that Lord Perth agreed to wire to Louis Davis in reliance on Davis's agreement to repay $27,500.

KERR
&
WAGSTAFFE
LLP

COMPLAINT

44.     Lord Perth is entitled to prejudgment interest on the entire amount of $55,000, from the date of August 17, 2006.

### THIRD CAUSE OF ACTION
### Fraud
(Against Defendant Louis Davis)

45.     Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 44, as though fully set forth herein.

46.     Beginning in or about early 2003, and continuing until August 2006, Louis Davis represented to Lord Perth that, if Lord Perth wired him money for the purposes of investing it in CyberMDx, he would in fact invest the money in CyberMDx on Lord Perth's behalf.

47.     Lord Perth actually and justifiably relied on these representations by commencing and continuing to wire Louis Davis monies to invest in CyberMDx.

48.     Each of these representations was false when made.  In fact, Louis Davis did not invest all of the money wired to him by Lord Perth into CyberMDx.  Instead, he failed to invest $404,876 into CyberMDx as promised.

49.     When Louis Davis made these representations, he knew them to be false and made these representations with the intention to deceive and defraud Lord Perth and to induce Lord Perth to act in reliance on these representations in the manner hereafter alleged, or with the expectation that Lord Perth would so act.

50.     Lord Perth, at the time these representations were made by Louis Davis, and at the time Lord Perth took the actions herein alleged, was ignorant of the falsity of Louis Davis's representations and believed them to be true.  In reliance on these representations, Lord Perth was induced to and did wire and continue to wire monies to Louis Davis to invest in CyberMDx, totaling $1,110,000.

51.     As a direct and proximate result of the fraudulent conduct of Louis Davis as alleged, Lord Perth was induced to wire $1,110,000 to Louis Davis to invest in CyberMDx, and has been damaged in that amount.

52.     In the alternative, as a direct and proximate result of the fraudulent conduct of Louis Davis as alleged, Lord Perth was induced to wire $1,110,000 to Louis Davis to invest in



KERR
&
WAGSTAFFE
LLP

- 8 -

CyberMDx, of which Louis Davis misappropriated $404,876, and Lord Perth has been damaged in the amount of $404,876.

53.    The foregoing conduct of Louis Davis was an intentional misrepresentation of a material fact, made with conscious disregard of Lord Perth's rights, and with malice and oppression.  Lord Perth is therefore entitled to an award of punitive damages.

### FIFTH CAUSE OF ACTION
### Conversion
(Against All Defendants)

54.    Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 53, as though fully set forth herein.

55.    Beginning in September 2003, and continuing through August 2006, Lord Perth transferred monies to Louis Davis on the express understanding and agreement that Louis Davis should pay the same to CyberMDx on Lord Perth's behalf.  A total of $1,110,000 was transferred in this manner and on this understanding.  As alleged above, all of the transfers were made in reliance on fraudulent misrepresentations by Louis Davis.

56.    Louis Davis in fact received the monies in his Bank of America account in San Francisco, California.

57.    Louis Davis and his wife, Sue Ann Davis, acting in concert with each other, converted $404,876 of the $1,110,000 to their own use, using it to pay for personal expenses, including, on information and belief, the repayment of a $400,000 construction loan that was secured by a parcel of land owned by Sue Ann Davis in Madera County.  That sum of $404,876 was neither invested in CyberMDx nor returned to Lord Perth.

58.    As a proximate result of Defendants' conversion, Lord Perth has suffered damages in the amount of $404,876.

59.    Plaintiff is entitled to prejudgment interest on the amount converted.

60.    The Defendants' acts as alleged above were willful, wanton, malicious and oppressive, and justify an award of punitive damages.

WHEREFORE, Plaintiff prays:

    a.   for damages for breach of the promissory note, in the amount of $150,000 together with interest at the rate of 1% above prime interest per annum;

    b.   for damages for breach of contract, in the amount of $55,000, together with prejudgment interest at the rate allowed by law from August 17, 2006, forward;

    c.   for damages for fraud, in the amount of $1,110,000, together with prejudgment interest as allowed by law from the date of each transfer, which will date will be proven at trial;

    d.   for damages for conversion, in the amount of $404,876, together with prejudgment interest as allowed by law from the date of the conversion;

    e.   for punitive damages;

    f.   for costs of suit incurred herein;

    g.   for reasonable attorneys' fees as provided for by the May 19, 2005, promissory note; and

    h.   for such other and further relief as the court may deem just and proper.

### PLAINTIFF DEMANDS A TRIAL BY JURY

DATED: June 27, 2008

KERR & WAGSTAFFE LLP

By _____
    ADRIAN J. SAWYER

Attorneys for Plaintiff
JOHN ERIC PERTH

KERR
&
WAGSTAFFE
LLP

COMPLAINT

# EXHIBIT A

## PROMISSORY NOTE

San Francisco California

FOR VALUE RECEIVED, the undersigned unconditionally promises to pay to Lord J.E.Perth, or order, at such place as may be designated in writing by the holder hereof, the principal sum of $150,000, together with interest on the unpaid principal balance hereunder, at the rate of 1% above prime interest per annum.

Obligor: (i) waives presentment, demand, notice of demand, protest, notice of protest and notice of nonpayment and any other notice required to be given under the law to Obligor, in connection with the delivery, acceptance, performance, default or enforcement of this note, any endorsement of this note or any document or instrument evidencing any security for payment of this note; (ii) agrees that no such action, failure to act or failure to exercise any right or remedy on the part of Louis L. Davis shall in any way affect or impair the obligations of Obligor or be construed as a waiver by Lord J.E Perth of, or otherwise affect, any of Lord J.E.Perth rights under this note or under any document or instrument evidencing any security for payment of this note; and (iii) agrees to pay, all costs and expenses of collection of this note and/or the enforcement of Lord J.E.Perth rights with respect to, or the administration, supervision, preservation, protection of, or realization upon, any property securing payment hereof, including reasonable attorneys' fees.

This Note is delivered in and shall be governed by and construed and enforced under the laws of the State of California without reference to conflict of laws principles.

WITNESS:                          Louis L. Davis

_____          By_____


In on the 19th day of May , 2005 before me personally appeared Louis L. Davis , to me known and known by me to be the person executing the foregoing instrument, and he acknowledged said instrument by him executed to be his free act and deed in said capacity and the free act and deed of CyberMDx, Inc.

NOTARY PUBLIC
Print Name: Jimmy Phan
My commission expires: February 18, 2007



1